UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUO HUA KE,
HECTOR ENRIQUE ESTRADA
GONZALES,
WEN JIAN HE,
JI LIN,
SAU LAN NG,
AHR KION TIN, and
YOKE ENG TIN,

                     Plaintiffs,

        -against-

JOHN MORTON,JAMES CHAPARRO,
CHRISTOPHER SHANAHAN,
JAMES DINKINS,T. HAYES, JR.,
THOMAS F. FARRELL,
PATRICK HEEREY,
JOHN DOE & JANE ROE ICE AGENTS 1-
20, and
JOHN DOE & JANE ROE INTERPRETERS
1 & 2,

                  Defendants.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 8671 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

           In this action, brought pursuant to 42 U.S.C. §§ 1983 and 1985, Plaintiffs claim

that their civil rights were violated when Immigration and Customs Enforcement ("ICE") Work

Site Enforcement Unit ("WSE") agents entered Plaintiffs' residence, questioned Plaintiffs about

their immigration status, and arrested them for civil immigration violations, all in furtherance of

a criminal investigation.  (See Am. Cmplt.)  Defendants now move to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) or, in the alternative, for summary

judgment.  (See Not. of Mot.)  For the reasons stated below, Defendants' motion to dismiss will

be GRANTED.

## BACKGROUND

Plaintiffs Guo Hua Ke, Hector Enrique Estrada Gonzalez, Wen Jian He, Ji Lin, Sau Lan Ng, Ahr Kion Tin ("AK Tin"), and Yoke Eng Tin ("YE Tin"), all resided at 937 Danbury Road in Wilton, Connecticut, on September 8, 2010, when immigration agents conducted the raid at issue in this litigation.  (Am. Cmplt. ¶¶ 9-15)

Defendant John Morton, is the Director of ICE in Washington, D.C. (Id. ¶ 16) Defendant James Chaparro is Executive Associate Director of ICE's Office of Enforcement and Removal Operations ("ERO") in Washington, D.C.  (Id. ¶ 17)  Defendant Christopher Shanahan is the Field Office Director for ICE ERO in New York. (Id. ¶ 18)  Defendant James Dinkins is the Executive Associate Director for ICE's Office of Homeland Security Investigations ("HSI") in Washington, D.C.  (Id. ¶ 19)  Defendant James T. Hayes Jr. is the Special Agent-in-Charge of ICE HSI in New York.  (Id. ¶ 20)  Defendant Thomas F. Farrell is Assistant Inspector General at the U.S. Department of Labor ("DOL") in Washington, D.C.  (Id. ¶ 21)  Defendant Patrick Heerey was the ICE ERO Case Officer for this matter in New York.  (Id. ¶ 22)[1]

The Office of Enforcement and Removal Operations, and the Office of Homeland Security Investigations, operate within different directorates at ICE, with different chains of command, and with different responsibilities.  HSI conducts investigations and arrests illegal aliens.  ERO manages and oversees the civil immigration detention system, and is thus responsible for detaining and removing illegal aliens after they are arrested.  (Buchanan Decl., Exs. K, N, M, E at 33-35, 71-73)

---

[1]  The Amended Complaint also names as defendants John Doe and Jane Roe ICE Agents 1-20, and John Doe and Jane Roe Interpreters 1 and 2, who allegedly participated in the raid, arrests, and detention of Plaintiffs.  (Id. ¶¶ 23-24)

Plaintiffs allege that on the morning of September 8, 2010, ICE agents raided the "employee dormitory" where they resided. (Id. ¶ 25) The housing was provided by the restaurant where Plaintiffs worked. (Id. ¶ 25) ICE agents woke the Plaintiffs, asked them to assemble in the living room, and asked for identification documents and immigration status. (Id. ¶¶ 25-32) Plaintiff AK Tin alleges that an ICE agent followed her to her room to retrieve her identification, and that the agent watched as she changed her clothes and went to the bathroom. (Id. ¶ 31) Plaintiffs also complain that agents told them that if they did not tell the truth they "will have trouble." (Id. ¶¶ 30-31) ICE agents arrested all of the Plaintiffs, placing Ke and Lin in metal handcuffs, and the rest in rope ties. (Id. ¶ 25) Plaintiffs further allege that the ICE agents did not show Plaintiffs any identification or paperwork, such as a search warrant. (Id. ¶¶ 27, 33)

ICE agents drove the Plaintiffs to New York and placed them in a "cold and dirty" room that had "food and garbage all over the floor." (Id. ¶ 35) Agents then interrogated the Plaintiffs. Plaintiff Ke alleges that he was "in a very bad condition mentally at the time" and that he was "confused." (Id. ¶ 35) Plaintiff AK Tin alleges that the ICE agent never informed her of her rights. (Id. ¶ 36) Plaintiffs also allege that they were shown a photo array, and asked to identify the "boss" or "owner" of the restaurant where they worked. (Id. ¶¶ 38-39)

ICE's Worksite Enforcement Unit, which is part of the HSI directorate, conducted the September 2010 raid at issue. (Id. ¶ 49) After Plaintiffs had been arrested and their sworn statements were memorialized, Plaintiffs Ke, Lin, and He were turned over to ERO for detention, because each was subject to a final order of removal. (Buchanan Decl., Ex. E at 72-73, Ex. P at 5-6, 27-29, 32) The other Plaintiffs were released the same day as their arrest. (Id., Ex. P at 11, 16, 21, 26)

ICE initiated criminal proceedings against Ke[2], and on October 12, 2010, he was transferred from immigration custody to the Metropolitan Detention Center in Brooklyn, New York.  (Id. ¶¶ 46-47)

The Amended Complaint alleges that Defendants Morton, Chaparro, Shanahan, Dinkins, Hayes, and Farrell (collectively, the "Supervisory Defendants") oversee and directly implement ICE policy establishing the Worksite Enforcement Unit, which carried out the raid at issue.  (Id. ¶ 49)  The Complaint further asserts that public comments made by the Supervisory Defendants suggest that they have acquiesced to "repeated . . . inappropriate action taken by ICE personnel in carrying out agency policy."  (Id. ¶ 48)

The Amended Complaint alleges that the Supervisory Defendants also oversee and directly implement ICE policy that established Fugitive Operations Teams ("FOT").  Citing to a 2006 ICE memorandum, Plaintiffs allege that the Supervisory Defendants pressured Defendants Heerey and the John Doe and Jane Roe Defendants "to meet an annual quota of capturing 1,000 fugitive aliens per [FOT]."  (Id. ¶ 50)  Plaintiffs further allege that ICE policy has changed to permit collateral arrests of civil status violators to count toward FOT arrest quotas, thus removing the requirement that FOT focus on "criminal aliens."  (Id. ¶ 51)  The Supervisory Defendants allegedly encourage these "collateral arrests."  (Id. ¶ 54)

Plaintiffs further allege that "lawsuits against DHS and ICE officials throughout the country" have placed the Supervisory Defendants on notice of "unconstitutional home raids conducted by ICE agents."  (Id. ¶ 52)  Plaintiffs go on to allege that the Supervisory Defendants

---

[2]  The related criminal case is United States v. Ke, 10 Cr. 887 (PGG).  On August 23, 2011, Ke pleaded guilty to conspiring to harbor illegal aliens for purposes of commercial advantage and financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(1) and 1324 (a)(1)(B)(i).  (Buchanan Decl., Ex. H (Plea. Tr.); Indictment 10 Cr. 887 (Dkt. No. 2))  On October 26, 2011 this Court sentenced Ke to time served and two years of supervised release.  (10 Cr. 887 Dkt. No. 61)

encouraged Heerey and the John Doe and Jane Roe defendants to not obtain warrants before entering the Plaintiffs' residence.  (Id. ¶ 53)  In support of this allegation, Plaintiffs cite to a June 14, 2007 fax sent by Michael Chertoff, then Secretary of the Department of Homeland Security, to former Senator Christopher Dodd, stating that "[a] warrant is not necessary when arresting someone who is in the country illegally."  (Id., Ex. C)  In connection with the raid at issue here, Plaintiffs allege that Heerey and John Doe and Jane Roe Defendants utilized an "administrative warrant to gain illegal entry into a residence by forcing their way through the door or climbing through windows."  (Id. ¶ 54)

Finally, Plaintiffs allege that the Supervisory Defendants have not implemented any specific guidelines, protocols or training to ensure that ICE officers under their supervision conduct arrests within constitutional limits, nor have they investigated allegations of unlawful conduct during home raids such as that at issue here.  (Id. ¶¶ 56-57)

This action was filed on November 17, 2010.  (Dkt. No. 1)  On August 26, 2011, Plaintiffs filed an Amended Complaint.  (Dkt. No. 24)  On October 12, 2011, Defendants moved to dismiss the Amended Complaint.  (Dkt. No. 25)

## DISCUSSION

## I.   LEGAL STANDARD

### A.   Motion to Dismiss

"To survive a motion to dismiss," a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In making this determination, a court must be mindful of two corollary rules.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.  In other words, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (citation omitted); Iqbal, 556 U.S. at 678 ("'a formulaic recitation of the elements of a cause of action'" is insufficient to survive a motion to dismiss) (quoting Twombly, 550 U.S. at 555)).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679 (citing Twombly, 550 U.S. at 556).  The Supreme Court has stated that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

In deciding a Rule 12(b)(6) motion, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." In re Loral Space & Commc'ns. Ltd. Secs. Litigation, 01 Civ. 4388 (JOK), 2004 WL 376442, at *2 (S.D.N.Y. Feb. 27, 2004) (citing, inter alia, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Int'l Audiotext Network, Inc. v. AT & T Co., 62 F.3d 69, 72 (2d Cir. 1995) (citations omitted). A court may also consider "public documents of which the plaintiff has notice." Brodeur v. City of New York, No. 04-CV-1859(JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (citing

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).  Where a complaint's allegations contradict the terms of documents incorporated by reference, "the documents control and this Court need not accept as true the allegations in [a] complaint." Rapoport v. Asia Electronics Holding Co., Inc., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (citing Sazerac Co., v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).

Here, Defendants have attached as exhibits to their moving papers the following documents, inter alia:  the docket sheet, orders and opinions, transcripts of proceedings, and briefing in United States v. Ke, 10 Cr. 887(PGG) (see Buchanan Decl., Exs. B-H); ICE organizational charts and ICE website biographical information concerning several of the Defendants, and a DOL organizational chart (id., Exs. K-O); and copies of Plaintiffs' sworn statements made at the time of their arrest, and documents related to Plaintiffs' immigration status, including a release record, warrant of removal, and removal order.  (Buchanan Decl., Ex. P)

The materials from the parallel Ke criminal proceeding are all public records and are properly considered on a motion to dismiss.  Brodeur, 2005 WL 1139908, at *3.  The organizational charts and biographical materials are also "public documents."  (Id.)  This Court will also consider Plaintiffs' sworn statements made at the time of their arrest, and ICE release and removal records concerning Plaintiffs.  Because the Amended Complaint includes claims relating to Plaintiffs' arrest and detention, these documents are integral to the Amended Complaint.

**B.    Constitutional Claims Under Bivens**

This Court construes Plaintiffs' claims as having been brought under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  "[W]here an

individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called <u>Bivens</u> action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.'" <u>Lombardi v. Whitman</u>, 485 F.3d 73, 78 (2d Cir. 2007) (internal citations omitted) (quoting <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 496 (2d Cir. 2006)).  In other words, a <u>Bivens</u> action allows suit against a federal employee acting under color of federal law for damages resulting from the violation of an individual's constitutional rights.  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70-71 (2001).  The <u>Bivens</u> cause of action "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." <u>Iqbal</u>, 556 U.S. at 677.

   To be liable, a <u>Bivens</u> defendant must have been "personally involved in the claimed constitutional violation."  <u>Arar v. Ashcroft</u>, 585 F.3d 559, 569 (2d Cir. 2009).  Because the doctrine of <u>respondeat</u> <u>superior</u> does not apply, <u>see</u> <u>Iqbal</u>, 556 U.S. at 676, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates." <u>Bellamy v. Mount Vernon Hosp.</u>, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (citation omitted); <u>Rivera v. Lempke</u>, 810 F. Supp. 2d 572, 576 (W.D.N.Y. 2011) ("[m]ere failure to correct, or acquiescence in, a lower-level employee's violation is not enough").  A <u>Bivens</u> complaint that does not allege the personal involvement of each defendant is "fatally defective on its face."  <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).  Government officials "cannot be held liable unless they themselves" engaged in unconstitutional conduct; it is not enough for a defendant to simply have held a high position of authority.  <u>Iqbal</u>, 556 U.S. at 683; <u>id.</u> at 693 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

8

## II.   **FOURTH AMENDMENT CLAIMS**

Plaintiffs allege that ICE conducted the raid at their residence without a judicial or administrative warrant, and that the raid was conducted in a coercive manner such that any consent granted was not "informed," and thus was in violation of the Fourth Amendment.  (Am. Cmplt. ¶ 65)  Plaintiffs contend that the Supervisory Defendants are liable for Fourth Amendment violations because they "approv[ed]/encourage[ed]/order[ed] . . . such warrant-less, illegal home raids" and failed to intervene to prevent violations of the Fourth Amendment even after they were put on notice that such violations were occurring.  (Am. Cmplt. ¶¶ 84-87)

All Defendants have moved to dismiss the Fourth Amendment claims against them, arguing that "the allegations in the Amended Complaint fail to make a plausible claim that any of the Defendants had personal involvement in the entry of Plaintiffs' residence or their arrest."  (Def. Br. at 13)

### A.   **Applicable Law**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Administrative searches such as [that] at issue in this case are subject to the warrant requirement of the Fourth Amendment."  Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Dep't., 811 F. Supp. 2d 803 (S.D.N.Y. 2011) (citing Michigan v. Clifford, 464 U.S. 287, 291 (1984)).

For consent to a warrantless search to be valid, the consent must be "'freely and voluntarily given.'"  Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (quoting Bumper v.

9

North Carolina, 391 U.S. 543, 548 (1968)); United States v. Snype, 441 F.3d 119, 130-31 (2d

Cir. 2006). "Whether a consent to a search 'was in fact "voluntary" or was the product of duress

or coercion, express or implied, is a question of fact to be determined from the totality of all the

circumstances.'" Aguilar, 811 F. Supp. 2d at 812 (quoting Schneckloth, 412 U.S. at 227). "A

consent coerced by threats or force, or granted only in submission to a claim of lawful authority,

is not valid." Id. (citing Schneckloth, 412 U.S. at 233).

   As discussed above, to be liable under Bivens, a defendant must have been

"personally involved in the claimed constitutional violation," Arar, 585 F.3d at 569, and a Bivens

complaint that does not allege the personal involvement of each defendant is "fatally defective

on its face." Alfaro Motors, 814 F.2d at 886.[3]

---

[3]  In Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the Second Circuit addressed supervisory
liability in the context of an alleged constitutional violation as follows:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that:  (1)
> the defendant participated directly in the alleged constitutional violation, (2) the defendant,
> after being informed of the violation through a report or appeal, failed to remedy the wrong,
> (3) the defendant created a policy or custom under which unconstitutional practices occurred
> or allowed the continuance of such a policy or custom, (4) the defendant was grossly
> negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on
> information indicating that unconstitutional acts were occurring.

Id. at 873 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Williams v. Smith,
781 F.2d. 319, 323-24 (2d Cir. 1986))).

However, in Iqbal, the Supreme Court held that

> [i]n a § 1983 suit or a Bivens action – where masters do not answer for the torts of their
> servants – the term "supervisory liability" is a misnomer.  Absent vicarious liability, each
> Government official, his or her title notwithstanding, is only liable for his or her own
> misconduct.  In the context of determining whether there is a violation of clearly established
> right to overcome qualified immunity, purpose rather than knowledge is required to impose
> Bivens liability on the subordinate for unconstitutional discrimination; the same holds true
> for an official charged with violations arising from his or her superintendent responsibilities.

B.      **Analysis**

The allegations in the Amended Complaint are not sufficient to make out a

plausible claim that any of the named defendants had any personal involvement in the raid of

Plaintiffs' residence or in Plaintiffs' arrests, or that the Supervisory Defendants "create[d] a

policy or custom under which unconstitutional practices occurred."  Bellamy, 2009 WL 1835939

at *4.  Instead, the Amended Complaint is rife with "labels and conclusions," "formulaic

recitation[s] of the elements of a cause of action," and "naked assertion[s]" which are "not

entitled to the assumption of truth."  Iqbal, 556 U.S. at 678, 679 (quoting Twombly, 550 U.S.

555, 557)

---

Iqbal, 556 U.S. at 677.

"The [Second Circuit] has not yet definitively decided which of the Colon factors remains a basis
for establishing supervisory liability in the wake of Iqbal, and no clear consensus has emerged
among the district courts within the circuit."  Aguilar, 811 F. Supp. 2d at 814.  "Several district
court decisions have concluded that by rejecting the argument that 'a supervisor's mere
knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the
Constitution,' Iqbal, 556 U.S. at 814, Iqbal nullified several of the Colon factors."  Aguilar, 811
F. Supp. 2d at 814-15 (citing Bellamy v. Mount Vernon Hosp., 07 Civ. 1801, 2009 WL 1835939
at *4 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's
muster – a supervisor is only held liable if that supervisor participates directly in the alleged
constitutional violation or if that supervisor creates a policy or custom under which
unconstitutional practices occurred.").

The Aguilar court goes on to explain, however, that other courts "have questioned whether Iqbal
changed the standard of supervisory liability outside of the equal protection context."  Aguilar,
811 F. Supp. 2d at 815; see Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y.2009)
("Where the alleged constitutional violation involved 'invidious discrimination in contravention
of the First and Fifth Amendments,' Iqbal held that 'plaintiff must plead and prove that the
defendant acted with discriminatory purpose,' whether the defendant is a subordinate or a
supervisor. . . . Where the constitutional claim does not require a showing of discriminatory
intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the
Fourth and Eighth Amendments, the personal involvement analysis set forth in Colon v.
Coughlin may still apply.")

Here, this Court finds that the Supervisory Defendants' actions do not meet any of the Colon
factors, and therefore it is not necessary for this Court to determine the standard for supervisory
liability for violations of the Fourth Amendment post-Iqbal.

    1.      **John Morton and James Dinkins**

Plaintiffs allege that John Morton, Director of ICE, and James Dinkins, head of ICE's Office of Homeland Security Investigations ("HSI"), directed their subordinates to undertake the raid (Am. Cmplt. ¶ 64), that they "authorized the Fugitive Operations Teams at issue to not carry search warrants or arrest warrants approved by an impartial judge" (Am. Cmplt. ¶ 67), that they "approved, if not encouraged" this allegedly unconstitutional practice (Am. Cmplt. ¶ 69), and that they "knew, or should have known," about unconstitutional home raids, such as the one at issue here.  (Am. Cmplt. ¶¶ 85-87)  Plaintiffs have not alleged any policy or practice that Morton and Dinkins implemented, however, nor any unconstitutional policy or practice that Morton and Dinkins continued.

As an initial matter, Plaintiffs have pleaded no facts suggesting that Morton and Dinkins had any knowledge of the raid at issue.  As the Director of ICE, Morton oversees 20,000 employees worldwide; as head of HSI, Dinkins is responsible for 10,000 employees worldwide. As ICE leaders with these responsibilities, operating from Washington D.C., it is entirely implausible that they were involved in, or had knowledge of, the execution or planning of the raid at issue.  (Buchanan Decl., Exs. K, L, M).  See Aguilar, 811 F. Supp. 2d at 816 (claims that former DHS Secretary and former assistant secretary for ICE "intended to violate constitutional rights by . . . implementing [ICE] policies," and "encouraged, endorsed, and thus intended the unconstitutional conduct by ICE during home raids," were similar to the conclusory allegations found insufficient in Iqbal, and thus not entitled to any weight).[4]

---

[4]  The ICE documents submitted by Plaintiff (see Pltf. Exs. A, C-E, G-H) shed no light on the issue.  None of these documents contain information about ICE policy or operations in September 2010; none were authored by or sent to Morton or Dinkins; and most address much earlier time periods.  See, e.g., Ex. E (discussing 2006 data).

Furthermore, Plaintiffs' allegations that Morton and Dinkins knew of the alleged unconstitutional practices are insufficient to establish supervisory liability.  The letters, lawsuits, and newspaper articles cited by Plaintiffs concern ICE raids that occurred several years before the raid at issue here.  Moreover, nearly all of this material addresses the practices of Fugitive Operations Teams ("FOTs").  FOTs operate under the Office of Enforcement Removal Operations ("ERO"), however, and the home raid at issue here was conducted by agents from ICE's Worksite Enforcement Unit, which is part of the HSI directorate.  (See Am. Cmplt., ¶ 49, Ex. E at 4, Exs. A-G)  While Defendant Dinkins is head of HSI, the information that Plaintiffs allege "[a]t best . . . suggest[s] that the defendant[], [an] official[] at the highest level of government in charge of overseeing a bureaucracy of . . . thousands of people, had access to information indicating that a handful of field agents in disparate locations around the country had engaged in constitutionally infirm practices" at some point and for some unrelated objective. Aguilar, 811 F. Supp. 2d at 816.

Because Plaintiffs have failed to sufficiently allege that Morton or Dinkins knew of or had notice of any unconstitutional practices by the Worksite Enforcement Unit, and have otherwise failed to allege any personal involvement on their part, the Fourth Amendment claims against Defendants Morton and Dinkins will be dismissed.

### 2.      __James Chapparo and Christopher Shanahan__

Defendant Chapparo is the Director of ICE's Enforcement and Removal Office, an office with thousands of employees that is, as discussed above, responsible for the detention and removal of illegal aliens.  Defendant Shanahan is the ICE Field Office Director for the New York Enforcement and Removal Office.  (Buchanan Decl., Ex. K; see Def. Br. at 14)  Because Plaintiffs allege that the ICE agents who entered their home and arrested them were from ICE's

Worksite Enforcement Unit – a unit that is part of HSI and not part of ERO – it is implausible that either Chapparo or Shanahan had any personal involvement with the arrests at issue. Accordingly, the Fourth Amendment claims against Chapparo and Shanahan will be dismissed.

### 3.   Thomas F. Farrell

Defendant Farrell works for the Inspector General's Office of the U.S. Department of Labor in Washington, D.C. (Am. Cmplt. ¶ 21).  The Amended Complaint pleads no facts suggesting that he was involved in the raid and arrests at issue here.  Given his position, it is implausible that he, for example, authorized immigration agents "to not carry search warrants or arrest warrants" (Am. Cmplt. ¶ 67), or that he "approved, if not, encouraged" the allegedly unconstitutional policies and practices of ICE.  (Am. Cmplt. ¶ 69)  All claims against Farrell will be dismissed.

### 4.   Patrick Heerey

Plaintiffs allege that Defendant Heerey was one of the ICE agents who entered their residence and participated in the arrests, along with the John Doe and Jane Roe ICE Agents. (Am. Cmplt. ¶ 50)  However, Plaintiffs also allege that Heerey is a "Case Officer for ICE ERO . . . assigned to Plaintiff Ke's case." (Am. Cmplt. ¶ 22)  As noted above, ERO agents are responsible for the detention and removal of illegal aliens after they are arrested.  Consistent with the responsibilities of ERO, Defendants argue that Heerey's role was limited to administrative oversight of Plaintiff Ke's detention after he was arrested and transferred to ERO.  (Buchanan Decl., Ex. N; Def. Br. at 15)  Given the inconsistency in Plaintiffs' pleadings as to Heerey, and the implausibility of the allegation that he participated in the raid and arrests, Plaintiffs' Fourth Amendment claims against Heerey will be dismissed.

5.       **James T. Hayes, Jr.**

Plaintiffs allege that Defendant James T. Hayes Jr., the Special Agent-in-Charge of ICE's HSI office in New York – together with the other Supervisory Defendants – "authorized the Fugitive Operations Teams at issue to not carry search warrants or arrest warrants approved by an impartial judge" (Am. Cmplt. ¶ 67), "approved, if not encouraged" this unconstitutional practice (Am. Cmplt. ¶ 69), and that he knew, or should have known, about the unconstitutional home raids, such as the one at issue here (Am. Cmplt. ¶¶ 85-87).  As discussed above, these conclusory allegations are implausible given the organizational structure of ICE.  Furthermore, while Hayes oversees the Worksite Enforcement Unit in New York – the unit responsible for the raid here – Plaintiffs fail to allege any policy or practice that Hayes himself implemented, or any unconstitutional policy or practice that he continued.  Plaintiffs also fail to properly allege that Hayes had been informed of any constitutional violations committed by the Worksite Enforcement Unit, or that he was grossly negligent in supervising the subordinates who participated in the raid.  See Colon, 58 F.3d at 873.  Accordingly, Plaintiffs' Fourth Amendment claim against Defendant Hayes will be dismissed.

III.    **DUE PROCESS**

A.       **Alleged Unlawful Detention**

The Amended Complaint sets forth two claims for violation of substantive due process.  (See Am. Cmplt., Second Claim for Relief, Sixth Claim for Relief)  In the Second Claim for Relief, Plaintiffs allege that they were unlawfully detained in violation of the Fifth Amendment.  (See Am. Cmplt. ¶¶ 90-103)  They allege that an alien "must be released [from detention] when there is no significant likelihood of removal in the foreseeable future" (Am. Cmplt. ¶ 92), and that "several of the Plaintiffs" were "arrested and detained . . . despite them not

having final orders of removal." (Am. Cmplt. ¶ 94)  In addition, Plaintiffs allege that the

Supervisory Defendants have established and enforced policies to detain non-fugitive aliens.

(Am. Cmplt. ¶ 97)  It appears that the gravamen of Plaintiffs' due process claims is that the Fifth

Amendment prohibits ICE from detaining non-fugitive aliens.

      "It is well-settled that aliens have rights of procedural due process."  Doherty v.

Thornburgh, 943 F.2d 204, 209 (2d Cir. 1991) (citing Wong Yang Sung v. McGrath, 339 U.S.

33, 48-51 (1950); The Japanese Immigrant Case, 189 U.S. 86, 100-01 (1903); 8 U.S.C. §

1252(b)).  "These protections extend even to aliens . . . 'whose presence in this country is

unlawful.'"  Id. (quoting Mathews v. Diaz, 426 U.S. 67, 77 (1976)).

> Although the Supreme Court has questioned the extent to which aliens possess
> substantive rights under the due process clause, see, e.g., Galvan v. Press, 347 U.S. 522,
> 530-31 (1954); Harisiades v. Shaughnessy, 342 U.S. 580, 588-90 (1952), it never has
> held flatly that no such rights exist.  We think that aliens do have a substantive due
> process right to be free of arbitrary confinement pending deportation proceedings.

Id. at 209.

      "It is axiomatic, however, that an alien's right to be at liberty during the course of

deportation proceedings is circumscribed by considerations of the national interest.  Control over

matters of immigration and naturalization is the 'inherent and inalienable right of every

sovereign and independent nation.'"  Id. (quoting Fong Yue Ting v. United States, 149 U.S. 698,

711 (1893) and citing Carlson v. Landon, 342 U.S. 524, 534 (1952)).  In exercising its broad

power over immigration and naturalization, "Congress regularly makes rules that would be

unacceptable if applied to citizens."  Mathews, 426 U.S. at 80.  Moreover, the Supreme Court

has held that ICE may detain aliens who are subject to a final removal order for as long as six

months without infringing on protected liberty interests.  See Zadvydas v. Davis, 533 U.S. 678,

701 (2001).

Plaintiffs Ke, Lin, and He were each subject to final administrative orders of removal when they were arrested on September 8, 2010.  See Buchanan Decl, Ex. P at 5-6, 27-29, 32.  Under 8 U.S.C. § 1231, ICE was authorized to detain them.  As to the length of detention, Plaintiff Ke was detained by ICE for slightly more than a month before he was transferred from immigration custody to criminal custody pursuant to his related criminal case (Am. Cmplt. ¶¶ 45-47); Plaintiff Lin was released on an order of supervision on December 7, 2010 (Buchanan Decl., Ex. P at 5-6); and Plaintiff He was released from ICE custody when he was removed to China on January 11, 2011.  (Buchanan Decl., Ex. P at 28)  Accordingly, as to Plaintiffs Ke, Lin, and He, this Court finds that they were lawfully detained by ICE and that the length of detention did not exceed constitutional limits.  Zadvydas, 533 U.S. at 701 ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period.")

As to Plaintiffs Estrada, Ng, AK Tin, and YE Tin – while they were not subject to removal orders – they were subject to removal from the United States as illegal aliens. (Buchanan Decl., Ex. P at 1-32)  Each was arrested and released the same day, after being processed for removal proceedings under 8 U.S.C. § 1226(a).  (See Buchanan Decl., Ex. P at 11, 16, 21, 26)  "Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), ICE has the authority to arrest and detain any alien pending a decision in removal proceedings, as well as discretion to release certain aliens."  Santana v. Muller, No. 12 Civ. 430(PAC), 2012 WL 951768, at * 2 (S.D.N.Y. Mar. 21, 2012).  Here, ICE exercised that discretion by briefly detaining Plaintiffs Estrada, NG, AK Tin, and YE Tin, and then choosing to release them on their

own recognizance.  In doing so, ICE did not violate these plaintiffs' Fifth Amendment due process rights.

      **B.**      <u>**Other Alleged Due Process Violations**</u>

      In the Amended Complaint's Sixth Claim for Relief, Plaintiffs assert that Defendants violated their due process "[r]ight to be free from, and to obtain judicial relief for, unjustified intrusions on personal security."  (Am. Cmplt. ¶ 136)  <u>See</u> <u>Lombardi v. Whitman</u>, 485 F.3d 73, 78-79 (2d Cir. 2007) ("The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference.")  Plaintiffs assert that at least one of their number was arrested without being asked to produce identification and without being asked about her immigration status, that Plaintiffs were treated "so roughly" that they were traumatized, and that, as to the Supervisory Defendants, a policy of early morning arrests encourages "arbitrary and capricious arrests" and represents "overbroad enforcement" of ICE policy.  (Am. Cmplt. ¶¶ 137-141)

      "In order to . . . trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity. . . .'"  <u>Lombardi</u>,485 F.3d at 81 (quoting <u>Smith v. Half Hollow Hills Cent. School Dist.</u>, 298 F.3d 168, 173 (2d Cir. 2002) (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033, n. 6 (2d Cir.1973)) (internal quotation marks omitted)).

      Here, the conduct about which Plaintiffs complain was not "outrageous and egregious" or "brutal and offensive to human dignity" so as to trigger a violation of substantive due process.  <u>Lombardi</u>, 485 F.3d 73 at 81 (citations omitted)).  The Amended Complaint does not allege that ICE agents were physically violent, and warnings to tell the truth do not constitute a constitutional violation.

Plaintiffs also allege that their substantive due process rights were violated when an ICE agent allegedly watched "Plaintiff(s) dress/undress without letting them close a door or have any privacy."  (Am. Cmplt. ¶ 117)  "The Second Circuit has long recognized that an arresting officer has a duty to ensure that an arrestee is sufficiently dressed before removing her from her residence." United States v. Rudaj, 390 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (citation omitted).  "In the fulfillment of that duty, the officer may accompany the arrestee into the residence (or another part thereof) to maintain a watchful eye on her. . . ." Id. (citing Washington v. Chrisman, 455 U.S. 1, 6 (1982) ("The officer had a right to remain literally at [the arrestee's] elbow at all times. . . .")).

Here, AK Tin is the only plaintiff to allege that an ICE agent watched her change into suitable clothing.  (Am. Cmplt. ¶ 31)  However, this conduct does not rise to a level that is "brutal and offensive to human dignity."  The ICE agent was fulfilling his or her duty to maintain a watchful eye on an arrestee.

Plaintiffs' due process claims will be dismissed.

## IV.   **EXCESSIVE FORCE**

Plaintiffs' excessive force claim is based on allegations that, on the morning of the raid, ICE agents pushed through the front door of Plaintiffs' residence and "shov[ed] aside [the person who opened the door]" (Am. Cmplt. ¶ 115); that ICE agents used "metal handcuffs for some of the arrestees but not all" (Am. Cmplt. ¶ 116); that ICE agents "threaten[ed] Plaintiffs with 'trouble' if they did not cooperate, and [told] Plaintiffs [that] they would 'not return' if they did not respond to questions" (Am. Cmplt. ¶ 117); and that ICE agents yelled at Plaintiffs and used profanity while questioning them.  (Id.)

"Under <u>Bivens</u>, a plaintiff may recover money damages against an officer acting under color of federal law for using excessive force in violation of the Fourth Amendment in effecting his arrest." <u>Torres-Cuesta v. Berberich</u>, No. 08–CV–1382 (ARR)(LB), 2011 WL 3298448, at *12 (E.D.N.Y. Aug. 1, 2011) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394 n. 9 (1989)); <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" <u>Maxwell v. City of New York</u>, 380 F.3d 106, 108 (2d Cir. 2004) (citing <u>Graham</u>, 490 U.S. at 397). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham</u>, 490 U.S. at 396. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." <u>Id.</u> (citations and internal quotation marks omitted).

To the extent that Plaintiffs' claims are based on verbal abuse, they fail. "[C]laims of verbal abuse are insufficient to establish a constitutional violation as a matter of law." <u>Liriano v. ICE/DHS</u>, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011). "[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right . . . ." <u>Id.</u> (quoting <u>Shabazz v. Pico</u>, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (internal quotation marks omitted); <u>see also</u> <u>Harwe v. Floyd</u>, No. 3-09-cv-1027 (MRK), 2011 WL 674024, at *1 (D.Conn. Feb. 17, 2011) ("the Fourth Amendment to the United States Constitution does not require . . . police officers to be polite"); <u>Davidson v. Tesla</u>, No. 3-06-cv-861 (JCH), 2008 WL 410584, at *4 (D.Conn. Feb. 13, 2008) ("[Plaintiff's] complaint that [the officer] behaved

towards him in an angry, hostile, aggressive and belligerent manner [ ] fails to establish a cognizable constitutional injury as a matter of law.") (internal quotation marks omitted).

Plaintiffs' remaining allegations are insufficient to state a claim for use of excessive force under the Fourth Amendment.  The only allegation of any physical force is that ICE agents "shoved aside" an unnamed plaintiff upon entry into Plaintiffs' residence.  (Am. Cmplt. ¶ 115)  "[N]ot every push or shove . . . violates the Fourth Amendment," however, see Graham, 490 U.S. at 396, and there are no facts suggesting that this action – or Defendants' use of handcuffs – rises to the level of excessive force.

## V.   FOURTEENTH AMENDMENT EQUAL PROTECTION

Plaintiffs allege that Defendants violated the Fourteenth Amendment's equal protection clause because they "used racial profiling in their arrests of Plaintiffs."  (Am. Cmplt. ¶ 144)  The racial profiling claim is based on an allegation that ICE agents told Plaintiffs "that there was 'no use' in getting an attorney."  Plaintiffs assert that this statement was made "presumably because Defendants assumed all residents to be illegal aliens."  (Am. Cmplt. 146) Plaintiffs also claim that the Supervisory Defendants have taken "no action to stop or abate the racial profiling that typically occurs in the illegal home raids."  (Am. Cmplt. ¶ 149)

These vague, speculative, and conclusory allegations are not sufficient to state a claim for a violation of equal protection.  "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  "[U]nder Iqbal, the plaintiffs are required to plead that an individual defendant against whom relief is sought 'acted with discriminatory purpose.'"  Aguilar, 811 F. Supp. 2d at 820 (citing Iqbal, 556 U.S. at 675).  "That requires the plaintiffs to plead 'sufficient factual matter

to show that [the defendants] adopted and implemented' the challenged policies 'not for a

neutral, investigative reason but for the purpose of discriminating on account of race, religion, or

national origin.'" Id. (citing Iqbal, 556 U.S. at 675-76).  Although Plaintiffs plead their

respective race and ethnicity, there are no factual allegations in the Amended Complaint that

plausibly suggest that Defendants acted with discriminatory purpose.  Accordingly, Plaintiffs'

equal protection claim will be dismissed.

## VI.    COMMERCE CLAUSE

Plaintiffs allege that they "were engaged in interstate commerce," and that

because of Defendants' actions, Plaintiffs have lost their jobs, and "Plaintiffs' restaurant was

forced to close," resulting in a Commerce Clause violation.  (Am. Cmplt. ¶¶ 104-113)

Plaintiffs argue that as restaurant workers they have a "constitutional right to

engage in interstate trade free from unreasonable government interference."  (Pltf. Opp. at 17)

"An alien[, however,] has 'no constitutional right to work without authorization.'"  Aliens for

Better Immigration Laws v. U.S., 871 F. Supp. 182, 186 (S.D.N.Y. 1994) (quoting WJA Realty

Limited Partnership v. Nelson, 708 F. Supp. 1268, 1273 (S.D.Fla. 1989)).

In any event, Plaintiffs have not demonstrated that a Bivens remedy is available

for violations of the Commerce Clause:

> [T]he Supreme Court has warned that the Bivens remedy is an extraordinary thing that
> should rarely if ever be applied in "new contexts."  See Malesko, 534 U.S. at 69 (internal
> quotation marks omitted); Schweiker v. Chilicky, 487 U.S. 412, 421 (1988); see also
> Dotson v. Griesa, 398 F.3d 156, 166 (2d Cir. 2005) ("Because a Bivens action is a
> judicially created remedy . . . courts proceed cautiously in extending such implied relief
> . . . .").  In the 38 years since Bivens, the Supreme Court has extended it twice only:  in
> the context of an employment discrimination claim in violation of the Due Process
> Clause, Davis v. Passman, 442 U.S. 228 (1979); and in the context of an Eighth
> Amendment violation by prison officials, Carlson v. Green, 446 U.S. 14 (1980); see also
> Wilkie v. Robbins, 551 U.S. 537, 550 (2007) ("[I]n most instances we have found a
> Bivens remedy unjustified."); Malesko, 534 U.S. at 68 ("[W]e have consistently refused
> to extend Bivens liability to any new context or new category of defendants.").  Since

<u>Carlson</u> in 1980, the Supreme Court has declined to extend the <u>Bivens</u> remedy in any new direction at all.

<u>Arar v. Ashcroft</u>, 585 F.3d 559, 571 (2d Cir. 2009).

Plaintiffs' Commerce Clause claim will be dismissed.

## VII.   <u>MIRANDA CLAIM</u>

Plaintiffs' claim under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) must also be dismissed.  First, <u>Miranda</u>, does not apply to Plaintiffs' civil arrests by ICE agents.[5]  <u>See</u> <u>Avila-Gallegos v. INS</u>, 525 F.2d 666, 667 (2d Cir. 1975) ("Since deportation proceedings are not criminal in nature" there is "no necessity for <u>Miranda</u> warnings"); <u>Diaz-Bernal v. Myers</u>, 758 F. Supp. 2d 106 (D. Conn. 2010).  Second, even if Plaintiffs had <u>Miranda</u> rights in this context, the proper remedy would not be an award of damages under <u>Bivens</u>.  "The remedy for the failure to administer <u>Miranda</u> warnings is not civil damages through a <u>Bivens</u> or Section 1983 action, but rather the exclusion at trial of ensuing self-incriminating statements."  <u>Aderonmu v. Heavey</u>, No. 00 CIV. 9232(AGS), 2001 WL 77099, at * 3 (S.D.N.Y. Jan. 26, 2001) (citing <u>Neighbour v. Covert</u>, 68 F.3d 1508, 1510 (2d Cir. 1995); <u>New York v. Quarles</u>, 467 U.S. 649, 663 (1984)).

Plaintiffs' <u>Miranda</u> claim must be dismissed.

---

[5]  The only plaintiff later taken into criminal custody was Ke, who was prosecuted for harboring aliens for financial gain.  In the criminal case, Ke moved to suppress his post-arrest statements under <u>Miranda</u>.  (<u>See</u> 10 CR 887, Dkt. No 45)  This Court denied Ke's motion, finding after a hearing that the Government had established a valid waiver of <u>Miranda</u> rights.  (10 CR 887, Dkt. No. 45 at 10, 14)  To the extent that Ke is seeking to re-litigate the voluntariness of his post-arrest statements, <u>res judicata</u> bars him from doing so.  <u>See</u> <u>Almonte v. McGoldrick</u>, No. 06 Civ. 15217(LTS)(FM), 2009 WL 528609, at *4 (S.D.N.Y. Mar. 2, 2009) ("Plaintiff's claims that certain items were seized unreasonably could also have been raised in the federal criminal proceeding through motions to suppress, and such motions could also have been made to the extent Plaintiff allegedly made any inculpatory statements before he was properly advised of his <u>Miranda</u> rights. . . . Accordingly, Plaintiff's remaining claims are also barred by <u>res judicata</u>.")

## VIII.   FEDERAL TORT CLAIMS ACT

Plaintiffs' Eighth Claim for Relief is brought under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. § 1346(b).

> The FTCA provides a limited waiver of the federal government's sovereign immunity against civil actions for damages.  28 U.S.C. § 1346(b)(1)).  Pursuant to the FTCA, "a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"  Rivera v. United States, 928 F.2d 592, 608 (2d Cir.1991) (quoting 28 U.S.C. § 2679(b)(1)).  Thus, federal employees "are immune from suit on . . . claims of common-law tort"; the FTCA "makes suit against the United States the exclusive remedy."  Id. at 609.

Zandstra v. Cross, No. 10 Civ. 5143(DLC), 2012 WL 383854, at *2 (S.D.N.Y. Feb. 6, 2012); see

also 28 U.S.C. § 2679.  Because Plaintiffs have no remedy under the FTCA against individual

government employees, their FTCA claim must be dismissed.

Even if Plaintiffs had sued the United States rather than individual employees,

however, their FTCA claim would still fail.  Under 28 U.S.C. § 2675(a),

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

"The burden is on the plaintiff to both plead and prove compliance with the

statutory requirements. . . . In the absence of such compliance, a district court has no subject

matter jurisdiction over the plaintiff's claim."  In re Agent Orange Prod. Liab. Litig., 818 F.2d

210, 214 (2d Cir. 1987); see also Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).

Here, the Amended Complaint does not plead that any administrative claim was filed.

Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' FTCA claim, and it will be dismissed.[6]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 25).

Dated: New York, New York
      September 28, 2012

SO ORDERED.

_Paul A. Gardephe_

Paul G. Gardephe
United States District Judge

---

[6]  To the extent that Plaintiffs have attempted to plead a separate Section 1985 claim for conspiracy to violate their constitutional rights (see Am. Cmplt., Ninth Claim for Relief), this claim likewise fails:

> "[t]o withstand a motion to dismiss, the conspiracy claim must contain more than 'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights.' Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997); Shabazz v. Pico, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that a mere allegation of conspiracy with no facts to support it cannot withstand a motion to dismiss). Specifically, plaintiff must provide some factual basis supporting a 'meeting of the minds', such as that defendants 'entered into an agreement, express or tacit, to achieve the unlawful end'; plaintiff must also provide 'some details of time and place and the alleged effects of the conspiracy.'' Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (finding insufficient allegation of conspiracy despite plaintiff's specific claims of conspiracy to alter tapes and create illegal search warrants, as there was no basis for the assertion that defendants actually conspired together to bring about these actions), quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). . . ."

Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).  The Amended Complaint does not plead facts demonstrating a conspiratorial agreement or a "meeting of the minds."